**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Michael Anthony Hall, | |
|     Petitioner, | No. 2:07-cv-02263-MDS (HC) |
| vs. | **ORDER** |
| Matthew C. Kramer, Warden, | |
|     Respondent. | |
| _____ / | |

Petitioner Michael Anthony Hall, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a). Pending before the court are Hall's petition for a writ of habeas corpus (Pet.), Hall's amended petition (Am. Pet.), Respondent's answer to the amended petition (Doc. 33), Hall's traverse to Respondent's answer (Doc. 38), the order, findings, and recommendations of the Magistrate Judge (Doc. 25), and lodged documents 1-10 (LD 1-10). For the reasons discussed, Hall's petition is DENIED.

I

On February 10, 2005, Hall was convicted by a jury of attempting to dissuade a witness (Cal. Pen. Code. § 136.1(c)(1)), spousal abuse (Cal. Pen. Code § 237.5(a)), assault with a firearm (Cal. Pen. Code § 245 (a)(2)), violation of a restraining order (Cal. Pen. Code § 273.6(a)), two counts of criminal threats (Cal. Pen. Code § 422), and having personally used a firearm in connection with the assault (Cal. Pen. Code § 12022.5). LD 1 at 1-7. Hall was sentenced to a total of 11 years in prison. LD 1 at 8.

## A

Hall filed an appeal with the California Court of Appeal, Third Appellate District. In its decision affirming the judgment, the Court of Appeal summarized the facts as follows:

> [Hall] and the victim, J.H., are husband and wife. On June 10, 2004, they argued all day. The victim informed [Hall] she had thrown something of his away and [Hall] told her to stay out of his stuff. That evening, as the victim was getting ready to attend her son's graduation, [Hall] grabbed a pistol, pulled back the hammer, put the pistol to her left temple, and told her to give him his "fucking shit" or he would blow her head off. [Hall] eventually went outside and fell asleep in his truck.
>
> On August 10, 2004, the victim came home for lunch. [Hall] had a computer on and began yelling at her, demanding that she identify the person with whom she was having an affair. The victim denied cheating on [Hall]. [Hall] demanded that she decode the "cookies" on the computer. She sat down at the computer but did not know what to do. Eventually, the victim stood up and said she was not going to put up with "this" any longer. She tried to walk away, but [Hall] grabbed her by the neck and choked her. He said he

was going to "fucking kill" her if she did not tell him the truth. The victim began feeling weak. [Hall] threw her against a wall. [Hall] came over, picked the victim up and told her he was sorry. He laid her on a bed. [Hall] told the victim not to tell anyone what happened. Later that evening, [Hall] again told the victim not to tell anyone what he had done.

On August 18, 2004, the victim woke [Hall] up for work. He became angry and yelled at her for having slept in her daughter's bed. The victim explained that her daughter was scared and she laid down with her and fell asleep. The victim then laid on her own bed. [Hall] slammed his fists down on the bed, hitting the back of the victim's leg. She screamed and grabbed her leg. [Hall] said he was sorry. The victim told him to get away and not touch her. [Hall] went into a closet and said he was going to blow his head off. The victim asked him not to do it and [Hall] came out. The victim eventually left for work.

Later that day, the victim came home for lunch and found [Hall] asleep on the couch. The victim sat outside for a while. When it was time to go back to work, she grabbed her purse and things and [Hall] asked where she was going. She said back to work and started walking out. [Hall] came up behind her and said, "Don't you fucking walk out on me." He followed her to her car and said he was going to snap her head off. [Hall] said he knew the victim was cheating on him, called her a "no-good-for-nothing whore" and said he was not going to put up with it anymore. He told her not to tell the police or he would "blow every flicking cop's head off." He asked whom she was cheating with at work and said he would go to her place of work and "blow people's heads off" until she told him who it was. The victim got in her car and went back to work.

When the victim came home that evening, she again found [Hall] asleep on the couch. She went outside and called a girlfriend. [Hall] came outside and asked to whom she was talking. The victim hung up and said she was talking to "Nancy." She walked inside and [Hall] followed. [Hall] asked the victim what she wanted to do and she shrugged her shoulders and said she did not know. [Hall] raised his voice and demanded that she tell him what she wanted. She told [Hall] she was scared and did not want to live like that any longer.

[Hall] began gathering his things and the victim went back outside. [Hall] came out carrying his "stuff," including a rifle, and told the victim to get away from the "shop" beside the house or he would blow her head off. She went back inside. [Hall] came inside and told the victim to transfer some money into his account. She told him she could do that only when the bank is open. [Hall] then told her to withdraw money from the ATM. The victim drove to the bank and withdrew $200. She came back, gave [Hall] the money and said that was all she could get. He accused her of lying. He demanded the keys to her car, which she had locked. She refused. [Hall] said he would get in anyway and walked away. The victim jumped into the car and locked it. [Hall] ran up and began beating on the window. The victim drove away and [Hall] followed her in his truck. [Hall] pulled up beside the victim and started moving his vehicle toward her. He tried to cut her off and run her off the road. The victim eventually sped away. She pulled into a convenience store and spoke to a police officer. She obtained a
police escort to the courthouse.

The victim obtained a temporary restraining order against [Hall] on August 24, 2004. Deputy William High took the restraining order to the home of

4

[Hall]'s father. He saw [Hall] and said he was there to serve him. [Hall] fled to the backyard of the property. When Deputy High tried to follow, [Hall]'s father intervened and prohibited entry onto his property. Deputy High left the restraining order in a truck belonging to [Hall]'s father.

On August 27, 2004, Deputy Jason Nakamura responded to a 911 call at the victim's home and spoke with her. The victim was distraught, crying and shaking. She reported that [Hall] was on the property in violation of the restraining order. Nakamura spoke with [Hall], who volunteered that the restraining order was invalid because the address on it was incorrect. Nakamura checked the status of the restraining order and learned it was still in force. He tried to arrest [Hall], but [Hall] refused to cooperate. [Hall] was eventually taken into custody.

[Hall] was charged with the six offenses . . . as well as one count of stalking (Pen. Code, § 646.9, subd. (a)). The court later granted [Hall]'s motion to dismiss the stalking charge. At trial, the victim refused to testify and the jury was read the victim's preliminary hearing testimony. [Hall] testified on his own behalf. [Hall] was convicted on all remaining counts. His motion for a new trial was denied.

[Hall] was sentenced to an aggregated term of 11 years . . .

LD 5 at 2-6.

B

On August 4, 2006, the California Court of Appeal for the Third Appellate District affirmed Hall's conviction. LD 5 at 22. On September 13, 2006, Hall filed a petition for review in the California Supreme Court. LD 7 at 1. On

October 18, 2006, the petition was denied. LD 7 at 1.

C

On October 13, 2007, Hall filed an application for a writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254(a). Pet. at 23. On October 29, 2007, Hall filed an amended petition. Am. Pet. at 22.

II

A

The findings and recommendations of the Magistrate Judge are incorporated and accepted in full. Consequently, the Respondent's motion to dismiss, Doc. 11, construed here as a motion to strike, is granted as to "the subclaim/arguments contending that petitioner did not have opportunity to cross-examine the complaining victim about her hypnosis sessions at the preliminary hearing and that the procedures set forth in Cal. Evid. Code § 795 were not followed at the trial." Doc. 25 at 7-8. The following discussion relates only to those claims that remain.

B

Hall's petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, a federal court has limited power to grant habeas corpus relief. AEDPA provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision may result in a decision that is "contrary to" established federal law if it "applies a rule that contradicts the governing law set forth in our cases" or "confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from our precedent."  *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000).  "[C]learly established [f]ederal law" is defined as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The state court's decision may be "an unreasonable determination" if "the state court identifies the correct governing legal principle" but applies the principle unreasonably to the prisoner's factual situation.  *Williams*, 549 U.S. at 413.

    "In determining whether a state court decision is contrary to federal law, we look to the state's last reasoned decision," in this case, the opinion handed down by the California Court of Appeal.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  A state court determination "need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  *Powell v. Galaza*, 328 F.3d 558, 563 (9th Cir. 2003) (quoting *Early v. Packer*, 537 U.S. 3, 9-10 (2002)).

### C

    Hall claims that his Sixth Amendment right to confront a witness was violated when the victim's testimony was read to the jury.  Hall bases this claim on two

theories.[1]  First, Hall contends his previous opportunity to cross-examine the victim was not the type envisioned in *Crawford v. Washington*, 541 U.S. 36 (2004), because he had a right to have the jury listen to and evaluate evidence by seeing and hearing witnesses as they testify.  Am. Pet. at 16.  Second, Hall claims that the trial court failed to utilize "all avenues available" to induce the victim to testify before declaring her unavailable and allowing her testimony from the preliminary hearing to be read.  Am. Pet. at 15-16.  Neither claim has merit.

In *Barber v. Page*, the Supreme Court noted that "there has traditionally been an exception to the [C]onfrontation [C]lause requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant."  390 U.S. 719, 722 (1968); *see also Crawford*, 541 U.S. at 68 (confirming that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination").  However, before declaring a witness unavailable, there must be a "good-faith effort to obtain his presence at trial."  *Barber*, 390 U.S. at 725.  Finally, when a witness "simply refuse[s] to answer, nothing in the Confrontation Clause prohibit[s] the State from also relying on his prior testimony to prove its case."  *California v. Green*, 399 U.S. 149, 168 (1970).  Therefore, the determination of the California Court of Appeal will not be contrary to, or have involved an unreasonable application of, clearly established federal law in this case if (1) there was a previous opportunity to cross-examine the victim, and (2) a good faith effort was made to obtain the victim's testimony at trial before she was declared unavailable.

Hall had the opportunity to cross-examine the victim at the preliminary hearing.  LD 9 at 77.  Hall admits as much in his amended petition.  Am. Pet. at 15-

---

[1] Unexhausted theories put forward for the claim will not be considered.  *See infra* Part II.A

16. Hall contends, however, that the opportunity for cross-examination was not the type envisioned in *Crawford*, 541 U.S. 31, because he had a right to have the jury listen to and evaluate evidence by seeing and hearing witnesses as they testify. Am. Pet. at 16. However, Hall concedes in his brief that a witness's previous testimony may be read to the jury if he or she is deemed unavailable. Am. Pet. at 15. Further, *Crawford* clearly contemplates that testimony from a preliminary hearing may later be read to the jury upon a finding of unavailability. *See id.* at 68 (including "prior testimony at a preliminary hearing" in the class of evidence requiring unavailability and a prior opportunity for cross-examination before being presented). The presentation of previous testimony upon a finding of unavailability will never allow the jury to evaluate the nature and quality of a witness in the manner Hall demands. Consequently, Hall's contention contradicts his own statement and the reasoning of *Crawford*. Hall's previous opportunity to cross-examine the victim during her prior testimony was exactly the sort of opportunity contemplated by *Crawford*.

Consequently, this argument fails, and as such, the California Court of Appeal determination was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

Hall also claims that the trial court failed to utilize all avenues available to induce the victim to testify before declaring her unavailable and allowing her testimony from the preliminary hearing to be read. Am. Pet. at 15-16.

In support of his position, Hall cites *People v. Smith*, 30 Cal. 4th 581 (2003), *People v. Walker*, 145 Cal. App. 3d 886 (1983), and *People v. Sul*, 122 Cal. App. 3d 355 (1981). However, state court decisions are not clearly established federal law under AEDPA. *See Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003). Under clearly established federal law, all that is required is a "good-faith effort." *Barber*, 390 U.S. at 725.

At trial, after first answering several questions, the victim refused to answer a further question. LD 9 at 57. At the prosecution's request, the court ordered the victim to answer, warning her she would be held in contempt if she refused. LD 9 at 59-60. She again refused to answer, and then informed the court she would refuse to answer any more questions. LD 9 at 60-61. The court held the victim in contempt and sentenced her to 72 hours of counseling, but put a stay on the order for three days to allow to witness to reflect on her conduct. LD 9 at 62-72. After three days, the court asked the victim if there was anyone from previous counseling, a friend, or a close relative she wished to consult before deciding whether she then wished to answer. LD 9 at 74. She said no. LD 9 at 74. The court asked the victim to keep the cycles of domestic abuse–"a honeymoon" and "tension-building phase" followed by "some type of domestic violence"–in mind as she gave her answer. LD 9 at 74-75. The court then asked if there was anything the court could do to change her mind about providing testimony. LD 9 at 75. She said no. LD 9 at 75. The court reminded her that it could still hold her in contempt and that there was a very real possibility her failure to answer would make it difficult to prosecute her husband. LD 9 at 75. Finally, the court asked if she wished to speak with her court appointed attorney before answering, and she declined. LD 9 at 76. After these efforts, the victim refused to testify, the stay on the order was lifted, and the victim was deemed unavailable. LD 9 at 76, 82.

The California Court of Appeal referred to the *Barber* "good-faith effort" standard, reviewed these efforts by the trial court, and determined that the trial court did not err in finding the victim unavailable. LD 5 at 9, 11.

In light of the multiple concerted efforts by the trial court to persuade the witness to testify, this court cannot say that the California Court of Appeal's determination was contrary to, or involved an unreasonable application of, the requirement that a "good-faith effort" be made before a witness is declared

10

unavailable and his or her testimony read to the jury.  *See Barber*, 390 U.S. at 725.

D

Finally, Hall claims that his due process rights were violated when the trial court admitted the testimony of Hall's former wife, which the prosecution proffered would reveal she had been subjected to physical abuse by Hall some ten years prior. Am. Pet. at 22.  Hall's argument cites no cases by any court and is supported by the single complaint that the evidence was admitted "notwithstanding the fact such testimony was nearly 10 years old."  Am. Pet. at 22.

The Supreme Court has made clear that "[a]s applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice.  In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisebna v. California*, 314 U.S. 219, 236 (1941).  Inflammatory evidence that is irrelevant introduced at trial may give rise to a due process violation.  *See Estelle v. McGuire*, 502 U.S. 62, 70 (1991).

In *Estelle*, the Court considered the Court of Appeals' grant of a petition for habeas corpus on the grounds that evidence admitted at trial in state court violated petitioner's right to due process.  *Id*. at 65.  The petitioner had been convicted of second degree murder for the killing of his daughter.  *Id*.  The state court had allowed the admission of evidence of the daughter's prior injuries in order to prove "battered child syndrom," which exists when a child has sustained repeated and/or serious injuries by non-accidental means.  *Id.* at 66.  The Court determined that the evidence was relevant to the prosecution's case because it tended to show the death was intentional.  *Id.* at 69. Since the evidence was relevant, the court determined that there was no violation of due process.  *Id.* at 70.

Further, the Ninth Circuit has stated that "[o]nly if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due

11

process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Kealohapauole v. Shimoda,* 800 F.2d 1463, 1465 (9th Cir. 1986)).[2]

The trial court excluded testimony of Hall's former wife relating to restraining orders more than 10 years earlier, but permitted testimony relating to a 1995 order. LD 9 at 42. At trial, the former wife testified that Hall had pushed her down in a driveway after she said she wanted a divorce. LD 9 at 174. She also testified that Hall threatened to run his vehicle into her mother's house and kill the former wife. LD 9 at 163.

This testimony dealt with prior acts and threats of domestic violence similar to those acts and threats charged. The trial judge was careful to only admit testimony as to acts which had occurred within the 10 years prior to the incidents charged. Therefore, the testimony was relevant for the purposes of due process, *see Estelle*, 502 U.S. at 65, and there were at least some permissible inferences a jury could draw from the testimony in regards to the charged acts, *see Jammal*, 926 F.2d at 920. This court cannot say that the California Court of Appeal's determination was contrary to, or involved an unreasonable application of, the due process requirement of "fundamental fairness essential to the very concept of justice." *Lisebna*, 314 U.S. at 236.

---

[2] Although this is not clearly established federal law for the purposes of AEDPA, circuit court cases "may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help . . . determine what law is 'clearly established.'" *Duhaime v. Ducharme,* 200 F.3d 597, 600 (9th Cir. 2000).

CONCLUSION

Accordingly, it is hereby ORDERED that Hall's application for a writ of habeas corpus is DENIED. The Clerk is directed to enter judgment in favor of Respondent and close the case.

DATED: June 30, 2009

/s/ Milan D. Smith, Jr.
UNITED STATES CIRCUIT JUDGE
Sitting by Designation